KELLY v. DELLMAN
(No. 1469; May 8, 1928; 266 Pac. 1058)

Before KIMBALL and RINER, Justices, and ILSLEY, District Judge.

*Morrow & Morrow,* and *J. M. Roushar,* for appellant.

*John L. Sawyer,* for respondent.

ILSLEY, District Judge.

This cause was instituted by the receiver of the First National Bank of Gering, Nebraska, against the defendant Dellman, setting forth four causes of action, each upon a promissory note, the first to recover the sum of $824.16, the second the sum of $602.80, the third $95.64 and the fourth $5056.44. The defendant answered, setting up that he was a farmer, a laborer, uneducated, and that he trusted the First National Bank of Gering with all of his business papers; admitted the execution of the notes in the first, second, third and fourth causes of action, but alleged that they were all paid by moneys received by the bank from the sale of the beet crop grown by the defendant and the sale of certain chattel property; that the plaintiff had a record of all of the transactions between them, and asked for an accounting. A reply was filed, denying that the notes were paid. Trial was had to a jury, which returned a verdict for plaintiff for $578.42, upon which judgment was entered. Plaintiff appeals and complains that the verdict, findings and judgment as entered in the court below are contrary to law and are not sustained by the evidence. The plaintiff admitted on the trial that of the amounts sued for in the several causes of action, $3871.44 had been paid. The defendant, having pleaded payment, assumed the burden of proof.

Defendant testified that he was a beet farmer; that he had business with the First National Bank of Gering; that they loaned him money at different times in different amounts, for which he gave notes and when they became due he renewed them; that the defendant gave the bank a power

of attorney to receive his money and sign his checks from the beet company; that defendant was unable to read English; that he raised, during the season of 1923, off of 78 acres of land, 1,060 tons of beets, sold to the beet company at $8 per ton; that the bank received all of the money for the beets to apply on his notes and indebtedness. It also appears from the testimony that the bank sold certain chattels, consisting of seven or eight head of horses, a Ford car, some farm machinery, such as plows, beet drills, wagons, harness, and two cows. The defendant did not know for how much the property sold, but stated that someone told him that it brought $800. Defendant further states in his testimony that at times when he made settlement and gave new notes, the bank did not give him his old notes, but told him that they were in Omaha. At any rate, the defendant did not get any of his notes back. Defendant, his wife, and five children worked in the beet field, and they lived off of the products from cows and chickens on the ranch, and $120 that the bank let him have out of the proceeds of the beet checks. Dellman states that at the end of the year he figured that he broke even.

Mr. Kelly, the receiver, testified wholly from the bank books and such information as he was able to procure after his appointment as receiver, which occurred some time in January, 1925. He did not pretend to have any personal knowledge of the business transactions between Dellman and the Bank. The four notes sued upon were introduced in evidence, and the receiver found many mistakes on the books as to the credits that Dellman should have received. He found that the notes were not endorsed with proper credits, and a long typewritten statement, consisting of four pages, made by the receiver, was introduced in evidence. This statement purports to cover the indebtedness of Dellman during the time that he was doing business with the bank. The statement is a very unsatisfactory piece of evidence, even to the plaintiff, as receiver, who made it, because it mentions an item of $355.28 which he states "can-

not be definitely identified.'' It is not shown that the statement was made by anyone connected with the bank who had personal knowledge of the transactions with Dellman, or that the statement was made from the books of original entry. The statement was no doubt pure hearsay, and were it not for the peculiar way in which it was introduced in evidence without the objection of anyone, it would be wholly incompetent. However that may be, we recognize the rule that while incompetent testimony, introduced in evidence without objection, may be considered, the triers of fact may give it such weight as they deem it entitled. Weidenhoft, et al. v. Primm, 16 Wyo. 359, 94 Pac. 453; Jones v. Plummer, 137 Mo. App. 346; Richard I. Biggs & Co. v. E. Longhammer & Son, et al., 103 Md. 94, 63 Atl. 198.

We have not attempted to set out in detail all of the evidence in the case, but we have read and considered it carefully.

It is true that ordinarily, where payment is pleaded, the burden of proving it is on the one alleging it. In this case, however, the plaintiff admitted that the bank received for application on the indebtedness more than the amount of the notes sued on. The proof of payment in this case was a question of fact for the jury, and we are unable to see that the jury were in any wise wrong in reaching the verdict that they did. The bank was bound to give an accurate and strict accounting to Dellman, not alone because defendant was uneducated and ignorant of business methods, but for the additional reason that he gave the bank a power of attorney to handle his business and sign defendant's checks for the money received from the beet company. Surely common sense and reason would require the bank to accurately account to this defendant under such circumstances, and the trial seems to have proceeded on this basis. We do not find any evidence offered on behalf of the plaintiff by any officer or employee of the bank with whom the defendant personally had dealings. No one who directly cared for Dellman's business testified. None of the em-

ployees of the bank who received Dellman's checks under the power of attorney given it explains how the money received from the proceeds of the checks was applied to defendant's indebtedness. No book of original entry, paper or record of the bank that would throw light on its transactions with Dellman is offered in evidence. There was no showing on the part of the plaintiff that evidence of this character could not have been produced, but on the contrary, the only piece of evidence offered, which was the typed statement above referred to, purporting to be taken from the books and the records of the bank, was incomplete and unsatisfactory.

"If one fail to show such circumstances as are within his knowledge and power to prove that very failure may justify an inference that he would have done so had they not been unfavorable." Glendo State Bank v. Abbott, 30 Wyo. 109, 216 Pac. 700; 1 Wigmore on Ev., Secs. 285-286.

Taking the record as a whole, we think that the verdict of the jury was sustained by the evidence introduced on the trial, and that the judgment was entered according to law.

*Affirmed.*

KIMBALL and RINER, JJ., concur.