MEREDITH GMC, INC., a Wyoming Corporation,

*Plaintiff and Respondent*

vs.

GAYLE A. GARNER,

*Defendant and Appellant.*

(No. 2817; July 22nd, 1958; 328 Pac. (2d) 371)

For the defendant and appellant, the cause was submitted upon the brief and also oral argument of Paul Allen Barber of Casper, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of Thomas J. Fagan and James W. Fagan of Casper, Wyoming, and oral argument by Thomas J. Fagan.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Plaintiff, Merideth GMC, a dealer, contracted to sell a truck to one Wilson and left it with defendant, Gayle A. Garner, a serviceman, to be repaired and modified for oil field use to suit the purchaser. Wilson, who made the arrangements with Garner, was to do certain of the work himself and by an exchange of labor to bear a part of the cost of modification; Meredith was to pay Garner the remainder in cash. While the truck was in the process of modification in defendant's place of business, a fire occurred, causing damage to the vehicle for which plaintiff sought $1799.67, alleging two causes of action: One based on the negligence of defendant, and the other upon the doctrine of res ipsa loquitur. The trial court granted plaintiff judgment for $1506.80; and defendant has appealed, insisting that the judgment is not sustained by the evidence and is contrary to law.

There was no conflicting testimony regarding the happenings immediately before the fire. Two trucks were in the Garner shop on February 17, 1952, that of Meredith's and one belonging to Dawson. Before lunch on that day, Garner, Marsh (an employee), and Wilson carried an American Safety Gas Tank into the shop and set it on the catwalk of the Dawson truck. After lunch they picked up the gas tank to set it on a transmission jack; and Marsh, who had hold of one end of the tank, lost his hold; and the tank slipped to the cement floor. In the course of the fall the cap on

the filler spout of the tank came off, and gasoline splashed onto Marsh and the floor, resulting in an immediate explosion and fire. Garner, in explaining what happened, said:

"The fill cap on the tank was somewhat loosened. Now why, I can't say, but one hand hold around it and one on this fill cap was—the man on the north end—or George Marsh on the north end—and that cap slipped, which put the tank all down at him. As soon as it slipped out of his hand, of course, we had no control." He said he did not test the cap when it was picked up to see whether it was tight or not and said that the type of tank was a safe one if handled properly.

Counsel are in substantial agreement that the relationship of the parties was one of bailor-bailee and that the bailee in such a relationship is not an insurer but is liable only for his negligence. The briefs and arguments deal mainly with two issues: (1) Was there adduced before the court substantial evidence of defendant's negligence; and if so, (2) was there sufficient evidence of damage upon which to base the judgment against defendant.

The parties are in agreement that in cases such as the one at bar a defendant is required to use ordinary care; the burden of proof is upon the vehicle owner and does not shift; but the burden of going forward with the evidence does shift from plaintiff to defendant at various times. Both recite the text of Annotation, 16 A.L.R.2d 799, 805, § 5, and refer to the cases therein mentioned. Plaintiff insists that the principle stated in certain of these cases governs the present situation, entitling him to recovery under the doctrine of res ipsa loquitur, while defendant urges that the accident was inevitable since "according to the custom of the trade, [he] was performing the job of mounting a gasoline tank in a careful workmanlike

manner," and no negligence was proved. It appears to us unnecessary to discuss the doctrine of res ipsa loquitur or the obligation of either party to go forward with the evidence. Regardless of who had the burden, the evidence *was adduced* showing without contradiction what happened immediately preceding the fire. It was the province of the trial court to determine whether or not defendant was exercising ordinary care. Defendant urges that there was no testimony of fault or neglect on his part, but this is not for him to say. The record discloses a number of facts which we think the trial court might properly have considered as bearing upon the question of ordinary care. These include testimony regarding similar installations by defendant and by other persons, the weight of the tank, its nature, the loosened cap which was used as a "hand hold," the failure to check it for looseness, and the place and method by which the steps of the transference of the tank was effected as compared with the usual methods employed. Whether or not a party acts negligently or carefully is a question determinable by the trier of fact if there is any evidence which would show or tend to show the relative care or negligence which was exercised, or if intelligent minds may draw different conclusions as to the matters at issue. See Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350, 53 A.L.R. 73; Galicich v. Oregon Short Line R. Co., 54 Wyo. 123, 87 P.2d 27; 38 Am.Jur. Negligence § 345. As we view it, there was substantial uncontradicted evidence which might properly be interpreted to show the lack of ordinary care by the defendant.

For proof of the amount of damages which plaintiff claimed to have suffered, he relied in part upon the difference in the amount he had paid for the truck, $4-561.94 and the amount for which he sold it in a damaged condition, $3000. The difference between the

cost and the sale price was some evidence[1] of damage. However, it was not the most desirable since the cost of an article, while indicating the price that was paid for it, does not show the lowest possible purchase price on the open market, and similarly the mere recital of the amount received does not disclose that it was sold for the best price obtainable. The rule for establishing the measure of damages for injury to personal property is generally accepted as being that which we discussed in Johnson v. Hanover Fire Ins. Co., 59 Wyo. 120, 137 P.2d 615, 617, where we cited numerous cases and quoted 25 C.J.S. Damages § 83, p. 597:

" ' * * * the measure of damages for an injury to personal property which has not been entirely destroyed is the difference between its value at the place immediately before and immediately after the injury. * * * ' "

Generally, cf. Shikany v. Salt Creek Transp. Co., 48 Wyo. 190, 45 P.2d 645. In Wilcox v. Herbst, 75 Wyo. 289, 295 P.2d 755, 760, we indicated that value meant fair market value where the motor vehicle is not totally destroyed. Courts have come to accept under certain circumstances the cost of repair as proof of damage. See 6 Blashfield, Cyclopedia of Automobile Law and Practice, Part 1, perm. ed., p. 31; 5 Am.Jur. Automobiles §§ 745, 748, 749; 25 C.J.S. Damages § 162 d, p. 833. This is undoubtedly a rule of convenience to be applied alternatively with the proof of difference in value as the occasion may require. Such is indicated by A.L.I. Restatement, Torts § 928 (1939):

"Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value,

---

[1] 6 Blashfield, Cyclopedia of Automobile Law and Practice, Part 1, perm. ed., p. 79.

the damages include compensation for * * * the difference between the value of the chattel before the harm and the value after the harm or, at the plaintiff's election, the reasonable cost of repair or restoration where feasible, with due allowance for any difference between the original value and the value after repairs * * *."

And see 3 Wigmore on Evidence, 3d ed., §§ 716, 717. For a discussion of numerous cases dealing directly or tangentially with the problem, see Annotations, 64 A.L.R. 172, 175; 169 A.L.R. 1074, 1075.

We recognized the cost of repair as one method of proving damages to motor vehicles in Wilcox v. Herbst, supra. Plaintiff in the present action apparently had this method in mind when he introduced in evidence the estimate of cost of repair submitted by Triangle Motors, Inc., in the amount of $1666.31. Such instrument was unsatisfactory evidence because it was inadequately identified, the person who prepared it not being present for examination. We are inclined to think the estimate was pure hearsay, but defendant stated that he had no objection to the introduction of the exhibit after plaintiff had told the court he was trying to give the information he had as to the cost of repair. The general rule is that such evidence, admitted without objection, may be considered and given its natural probative effect. See Kelly v. Dellman, 38 Wyo. 346, 266 P. 1058; Ideal Bakery v. Schryver, 43 Wyo. 108, 299 P. 284; 20 Am.Jur. Evidence § 452; Annotation, 104 A.L.R. 1130.

From what we have said, we have no alternative but to affirm the case. There was uncontradicted evidence before the trial court which warranted a finding of negligence in causing the fire. Defendant in his testimony freely admitted the fire on his premises and the resulting injury to plaintiff's truck, the

amount of which was in legal effect admitted by defendant when the estimate of the repairs was received in evidence without his objection.

Affirmed.