Ralph ROGERS, Appellant (Defendant below),

v.

Lewis D. HANSEN and Barbara J. Hansen, Husband and Wife, Appellees (Plaintiffs below).

No. 2970.

Supreme Court of Wyoming.

May 2, 1961.

———◆———

Greenwood, Ferrall, Bloomfield, Osborn & Lynch, Cheyenne, for appellant.

Hathaway & Sigler, Torrington, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case Lewis D. Hansen and Barbara J. Hansen, husband and wife, as plaintiffs-appellees brought an action against Ralph Rogers to recover damages in the sum of $780 arising from an automobile collision which happened on December 23, 1958, about 9:30 a. m. at the intersection of U. S. Highway 85 in Goshen County, Wyoming, and a county road situated about a mile south of Hawk Springs, Wyoming. Plaintiffs alleged that the defendant-appellant Rogers was negligent in causing the collision. The defendant filed a general denial and subsequently filed an amendment alleging contributory negligence on the part of the appellees.

The case was tried to a jury who returned a verdict in favor of the appellees in the sum of $780. From that judgment the appellant has appealed to this court, alleging that the verdict and judgment are not sustained by the evidence and are contrary to the evidence. We think that the verdict and judgment were justified and that we should not interfere.

The case before us is comparatively simple and we hardly think that it is necessary to go into the minute details related by the witnesses in the case but it should be sufficient to give a general outline of the actual facts in the case. The appellees were taking a trip from Denver, Colorado, to Mitchell, Nebraska, to spend the holidays with Hansen's parents. Appellees were traveling along U. S. Highway 85 at the time above mentioned, driving at the rate of about fifty to fifty-five miles per hour. The brakes

on Hansen's car were in good condition. There was a crest or hump in the road some nine hundred feet south of the intersection herein mentioned. From that hump or crest to the intersection visibility was clear. The highway was wet but not slippery. The county road, on the other hand, was very wet, did not have a great deal of gravel on it, was slushy, and apparently required that the appellant should have had chains on the vehicle which he was driving. He was driving a Dodge pickup truck with a hayrack attached thereto, the total length of the pickup truck and the hayrack being about thirty-three feet, the latter being fifteen feet long. Appellant was traveling in a westerly direction on the county road approaching the intersection of the road and Highway 85. There was a legal stop sign at the intersection requiring the appellant to stop before entering onto Highway 85. After Hansen passed the hump or crest above mentioned, he saw the appellant approaching the intersection, but still some distance away to the east. However, Hansen let up on the gas to some extent but continued to drive and expected that before the appellant reached the highway he would stop, in view of the fact that Hansen had the right-of-way. But appellant did not stop. He told Hansen that he did not see him. He told Sheriff Campbell of Goshen County, Wyoming, and Highway Patrolman Howard Hyduck that he did not stop for the stop sign before crossing the highway due to the condition of the county road and because he thought that he would be unable to get his vehicle started again if he should stop. When Hansen was about seventy-seven feet from the intersection and saw that the appellant failed to stop, he put on his brakes, skidded the distance of about seventy-seven feet, swerving the car slightly to the west and hitting the hayrack in about the center with the upper part of the left fender striking the bottom of the hayrack and the bumper and grill proceeding underneath to hit the undercarriage of the hayrack and the right side of the bumper hitting the wheel of the hayrack. The hayrack was separated from the pickup at the time of the impact,

was swung around so that it hit appellees' vehicle on the left side toward the rear door, and was thrown into a borrow pit about twenty-five feet north of the highway. The Hansen car also continued north about the same distance after the impact, stopping near the center of the highway. The highway patrolman testified that appellant could have driven onto the highway even after stopping, and the appellant himself stated that he could have entered the highway after stopping if he had had chains on his pickup truck. Hansen testified that it would have been impossible for him to have swerved his car to the right and avoided the hayrack since the hayrack occupied practically the whole highway, and if he had tried to drive around it he would have hit loose gravel and probably smashed his car.

The appellant testified that he was almost across the highway when he saw Hansen's car at a distance of 525 feet and that if Hansen had swerved his car to the right he could have avoided hitting the hayrack. The jury evidently did not believe the appellant; that was their privilege, and we cannot interfere.

■ Counsel for appellant argue that if Hansen had stopped before he got to the intersection the accident would not have happened. That, of course, is a truism but is hardly persuasive to a jury or to a court. The question is, who was at the intersection rightly or wrongly when the collision occurred? The jury found that appellant was at the intersection wrongly and that appellees were not guilty of contributory negligence. There is no reason, so far as we can see from the evidence, why we could say that the jury was wrong in its determination.

■ Counsel for appellant intimate, or rather contend, that Hansen was driving too fast and should have avoided the collision. That is not borne out by the testimony. Hansen testified that when he was passing the crest or hump above mentioned, he was driving at fifty to fifty-five miles an hour. He eased up on the gas when he saw the intersection so that he was probably

traveling at less than fifty miles per hour, and there is no reason, according to his testimony, why he should not have done so. The highway patrolman testified that there was no indication that Hansen was driving too fast. Hansen was driving on a through highway. That may be gathered, at least inferentially, from the testimony in the record. When appellant failed to stop before entering the highway, he violated § 31–120, W.S.1957.

It was fortunate that Hansen and his wife both wore safety belts. Mrs. Hansen received a strain from the belt and Hansen himself had a nosebleed, but they made no claim for personal injury and the damages claimed are confined to those inflicted upon their car, which was a station wagon. It is hardly necessary to set out the detailed damage inflicted upon the appellees' car. That is described fully in the testimony in the record. Suffice it to say that the station wagon was wrecked quite completely. The witness Krug, an expert automobile man, stated that it would cost $863.27 to repair it. The witness Gentry stated that it would cost $841.57. Appellees did not consider it worthwhile to have the car repaired and they sold it at competitive bids for $300. One of the bidders bid as low at $78.50 and another bid $215. Hansen testified that he bought the station wagon shortly before the collision and paid $1,080. That was competent evidence. Other testimony in the record shows that the market value of the car before it was damaged was from $1,100 to $1,200. There is no merit in the contention that the value of the car, or the damage to it, was not shown adequately. See Meredith GMC, Inc. v. Garner, 78 Wyo. 396, 328 P.2d 371. However, the car had been in a previous accident. Hansen testified that the right front door and the right rear door were slightly damaged. The witness Krug testified that this damage would have cost fifty dollars to repair. The witness Gentry testified that this damage would have cost twenty-three dollars to repair. It is contended by counsel for appellant that this previous damage and the damage in the collision were undistin-guishable. We find no merit in that contention. Gentry and Krug saw the station wagon soon after the collision in question here. They were in a position to judge the damage inflicted on the doors of the right side of the car in the previous accident. At least, judging from the evidence, they thought they knew. They used their best judgment. They were competent automobile men and we are not in a position to question their judgment. Taking into consideration all the evidence in the case on the question of damages, the verdict returned by the jury was fully justified.

The judgment herein is affirmed.

Affirmed.