ROCKY MOUNTAIN PACKING CO., Inc.,
Appellant (Intervenor below),

v.

Frances BRANNEY, Appellee
(Plaintiff below).

V. J. Simms and Bonita W. Simms
(Defendants below).

No. 3199.

Supreme Court of Wyoming.

June 10, 1964.

---

Arthur F. Fisher, Casper, for appellant.

Jerry A. Yaap, Raymond B. Whitaker, of Whitaker & Yaap Casper, for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

On October 16, 1962, appellee, Frances Branney, commenced an action in conversion for damages in the sum of $1,000.00 against the defendants, V. J. Simms and Bonita W. Simms, hereinafter identified as "debtors"; and on the same day, charging that debtors had absconded with intent to defraud creditors, caused a writ of attachment to issue out of the district court accompanied by a notice of garnishment to the Wyoming National Bank, Casper, Wyoming. Service of the writ and notice was made on the same day, and on October 24, 1962, garnishee answered that it had in its possession and under its control the sum of $998.07 belonging to debtors. In the meantime, on October 19, 1962, appellant Rocky Mountain Packing Co., Inc., another creditor of debtors, commenced an action on an open account against debtors and also caused a writ of attachment and notice of garnishment to be served on the Wyoming National Bank. Following this, appellant filed its application to intervene in appellee's action. In essence, the pleading of appellant as a result of its garnishment alleged a lien upon the funds in the hands of the garnishee; alleged that appellee's action was wholly without merit; alleged that it was a mere fraudulent pretense to acquire funds belonging to the debtors; and by its proffered answer prayed that appellee's attachment and garnishment be voided. Appellee denied the charges of appellant

and asked that appellant's application to intervene be denied. Thereupon the trial court proceeded to hear the matter and by order to which further reference will be made, granted the intervention.

Upon trial, the court found generally for the appellee against debtors and appellant; entered judgment for appellee in the full amount of the sum garnisheed; and directed that the garnishee forthwith deposit said sum with the clerk of court for satisfaction of appellee's judgment. Appellant appeals from the judgment entered and from the order granting it the right to intervene.

The complaint of appellant concerning the order permitting intervention is that it unduly restricted appellant's participation in the proceedings by attempting to confine the issues between appellant and appellee to the charge of fraud. In this connection it should also be noted that while appellee at all times vigorously resisted the intervention of appellant, she has not appealed from the order allowing it. For that reason we shall assume without deciding that appellant is correct in its basic premise that it came into the action as a matter of right and therefore as intervenor its participation could not be so limited. Notwithstanding, we find no basis for appellant's complaint.

By its application appellant asked to be let in for the purpose of showing that appellee's claim of conversion "is completely without merit and the above entitled action was filed merely as a means of attempting to acquire" moneys belonging to debtors. At the time it also tendered a proposed answer to appellee's action, which in substance simply reiterated the charges made in the application but in addition contained a general denial of appellee's complaint. The prayer was for the court to determine that appellee's attachment was "completely without merit and without any legal foundation whatever and is therefore void" and further that appellant's attachment be adjudged as "legally authorized" pursuant to its "just claim" against debtors.

Upon hearing, the trial court as indicated above granted intervention; and while it is true that the order by way of summarization might be regarded as indicating that appellant was limited as contended, we do not so read it. The significant language is that appellant "is hereby allowed to intervene in the above entitled action for the purpose of showing that the plaintiff's claim against the defendants is completely without merit and that the same was filed merely as a means of attempting to secure unto her possession certain moneys which have been attached and which are on deposit with the Wyoming National Bank, of Casper." Compare this with appellant's stated purposes for intervention as made in its application. The substance is the same. Of course, we would readily agree that the order is somewhat ambiguous and that the meaning of the language employed is unclear as demonstrated by the difficulty encountered by the trial court and counsel in the trial of the case. Nevertheless, it would seem that appellant, having employed the language in the first instance and having had its request granted in full by the order assailed, can scarcely be heard here to complain.

Further than this, appellant admits that even though terms of the order could be regarded as imposing limitations in deprivation of its claimed rights, such limitations were not enforced and the record bears this out. Appellant's answer was permitted to stand; appellee was required to go forward with proof to establish her claim against debtors; appellant's counsel was accorded unrestricted cross-examination of appellee's witnesses; and appellant without hindrance was permitted to introduce evidence on its own behalf, all of which went to the merits of appellee's claim. Under the circumstances, if there was error in the terms of the order, it is not shown here that such error in any way prejudiced appellant.

Reverting now to the claimed erroneous judgment, appellant first argues that there was insufficient evidence to sustain the judgment upon appellee's theory of conversion. We need not dwell upon that contention for the reason that by way of amendment to her complaint appellee stated an alternative claim against debtors for breach of contract, and as we view it the record sustains the judgment on that theory. Of course, appellant does not concede that the amendment is properly before us, but we hold that it is. It was first offered and allowed at the pretrial conference, subject to a showing of prejudice by appellant which was never made. Further than this, no objection was made to evidence introduced by appellant to sustain such claim, and under Rule 15(b), W.R.C.P., the pleadings are deemed amended in that respect. Apparently anticipating that such might be the holding here, appellant then asserts that even on this theory the evidence was insufficient.

In support of this contention it is first advanced that appellee failed to prove damage as the result of the claimed failure of debtors to fulfill the terms of their agreement. Such a contention has, of course, been decided adversely to appellant by the trial court, and as a consequence our only concern is to determine whether or not the record contains substantial evidence sufficient to support the finding made. Woolsulate, Inc. v. Fremont Lumber Company, 75 Wyo. 492, 297 P.2d 818, 820.

Turning to pertinent portions of the evidence, the appellee testified that as the owner of restaurant premises and equipment operated in conjunction with her motel she entered into a lease agreement without term with the debtors sometime in the month of November 1961 whereby debtors were to take over and operate the cafe at a rental of $500.00 per month. The equipment had been purchased new in March 1961 from Knapp Supply at Casper, Wyoming, at an approximate cost of $10,-480.00. It consisted of large items such as stoves, a dishwasher, refrigeration equipment, tables and chairs, and also included smaller items such as electrical appliances, glasses, dishes, silverware, cooking utensils,

and other items ordinarily used in the operation of a cafe. She further testified that as a part of the agreement the debtors were to maintain and keep up the equipment and if necessary to replace items that were broken or lost. This testimony stands uncontradicted. It is true, as emphasized by appellant, that no inventory of the equipment was taken by appellee at the time debtors took possession or during the time they were there, but appellee did testify that she was familiar with the equipment in the cafe on that date; that debtors had taken an inventory of which she had no copy, but she had seen it and compared it with her inventory (partially shown by Exhibit 1) and there was no difference; and that the cafe was fully equipped when debtors commenced operations. The debtors continued to operate the cafe until about September 30, 1962, at which time they told appellee they were going on a vacation and had placed Mrs. Tuey, one of their employees, in charge. Some ten days later appellee was informed that debtors did not intend to return and having learned also that the cafe was being mismanaged with the employees getting drunk on the job, she took possession and placed a Mrs. Sprague in charge. At that time appellee obtained from Knapp Supply a list of the smaller items of equipment that had been purchased by her with the costs of the items noted thereon and from this list appellee and Mrs. Sprague proceeded to take an inventory. It would serve no purpose to describe in detail the items that were said to be missing, but based on cost the total loss shown was in the sum of $1,878.00.

While there are some inconsistencies in the testimony of appellee, her testimony that the cafe was fully equipped at the time debtors took over is corroborated by Mrs. Sprague. Mrs. Sprague, a person of some twenty years' experience in the restaurant business, testified that she was working there for debtors at the time and continued in such employment for a period of some seven months. She stated that in the beginning the cafe was fully equipped,

and while debtors had replaced some dishes and glasses that had been broken, considerable equipment, including a waffle iron and a charcoal broiler, was damaged beyond use. The witness also testified that the items listed by appellee as missing were either missing or damaged beyond repair, and that the equipment found on the premises was wholly inadequate for satisfactory operations.

There is other evidence which lends support to the finding made, but to us the foregoing, although somewhat general in nature, was sufficient if accepted by the trial court to warrant the conclusion that appellee had suffered damage at the hands of the debtors. Of course, appellant urges us to accept the testimony of its witness, Mrs. Tuey, who worked for debtors for several months beginning in May 1962 and who stated that while she was there the equipment was adequate and that debtors replaced items that were broken or lost. However, with respect to this, we need only say that such testimony did no more than create a conflict in the evidence and the trial court having resolved the conflict against appellant, we will not interfere. Willis v. Asbury Transportation Co., Wyo., 386 P.2d 934, 937; and Hoffmeister v. McIntosh, Wyo., 361 P.2d 678, 731, rehearing denied 364 P.2d 823.

Appellant next contends that appellee's proof of the amount of her damage was not sufficient to sustain the judgment. Again we are unable to agree with appellant. While it is true that the only evidence offered by' appellee relating thereto was the cost of the missing items in March 1961 in the total amount of $1,878.00, we must keep in mind that the loss was total and under the agreement debtors were required to replace the items. As a general rule, of course, the measure of damages for the loss or destruction of personal property is its market value at the time of loss, if it has a market value. Redwine v. Fitzhugh, 78 Wyo. 407, 329 P.2d 257, 262–263, 72 A.L.R.2d 664, rehearing denied 330 P.2d 112. But as there indicated, the rule

is not entirely inflexible and consideration must always be given to the basic fundamental principle "that the person injured shall receive a compensation commensurate with his loss and no more." Hunt v. Thompson, 19 Wyo. 523, 120 P. 181, 184, rehearing denied 122 P. 624. Our remarks in Wyoming Wool Marketing Association v. Woodruff, Wyo., 372 P.2d 174, 181, are equally apropos; it was there said:

> "It is not the absence of evidence which affords exact computation of the money value of damages suffered through negligence of the party found liable which renders a verdict or judgment improper. It is sufficient if there is evidence which furnishes a basis from which a reasonable estimate of the money damage may be made. * * *
>
> "Damages in actions of this kind are more frequently than not incapable of ascertainment with mathematical exactitude. All that is required is a reasonable approximation by the court or jury if within the limits of the evidence furnished them. * * *"

Like appellant, we would be better satisfied with the quality of the proof had it been in keeping with the aforementioned general rule or more directly tied in with the current cost of replacement. Nevertheless, under the circumstances of this case we are not disposed to hold that the trial court fixed the amount of the award without sufficient evidence. On occasions we have regarded the cost of personal property as constituting some evidence of the amount of damage where the loss was total. Rogers v. Hansen, Wyo., 361 P.2d 676, 678; and Meredith GMC, Inc. v. Garner, 78 Wyo. 396, 328 P.2d 371, 374. Furthermore, we remind counsel that the only witness produced at the trial from whom proof of the current cost of replacement might have been elicited was his own witness, Mr. Knapp. As owner of Knapp Supply, the witness was then engaged in the business of selling restaurant supplies at Casper, Wyoming, and in fact initially sold the equipment involved here to the appellee. From counsel's failure to inquire, the trial court might well have inferred that there was little, if any, fluctuation in cost between the time of purchase and the time debtors became responsible for the equipment under their agreement.

Finding no error in the record, we must affirm the judgment.

Affirmed.