624 P.2d 240 (1981)
The AETNA CASUALTY AND SURETY COMPANY and the Standard Fire Insurance Company, Appellants (Petitioners),
v.
John T. LANGDON, Insurance Commissioner of the State of Wyoming and Wyoming Insurance Department, Appellees (Respondents).
No. 5384.
Supreme Court of Wyoming.
February 27, 1981.
David D. Uchner and Nick Kalokathis, Lathrop & Uchner, P.C., Cheyenne, for appellants (petitioners).
John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and Walter Perry, III, Asst. Atty. Gen., Cheyenne, for appellees (respondents).
*241 Before ROSE, C.J.,[*] and McCLINTOCK, RAPER,[**] THOMAS and ROONEY, JJ.
ROSE, Chief Justice.
This appeal concerns a challenge by the appellant insurance companies, The Aetna Casualty and Surety Company and The Standard Fire Insurance Company, to a regulation promulgated by the Insurance Commissioner concerning adjustment of vehicle-damage claims. The contested regulation provides in pertinent part:
"Section 4. Settlement Options. Insurers shall adjust personal property losses, be it first or third party claims, by utilizing one of the following options:
"a. Pay for the loss in its entirety in money, based on an appraisal of the damage sustained by the insured's vehicle.
"b. Repair the damaged property."
"c. Replace the damaged property.
Appellants urge that the regulation fails to authorize diminution of fair-market value as an appropriate and acceptable standard for measuring property damage and physical damage, thus placing an interpretation on this regulation which they say conflicts with Wyoming case law and with the limitation-of-liability provisions of their existing insurance contracts.
Appellees Commissioner and Department agree with the interpretation placed on the regulation by the appellants and seek to defend that interpretation of the regulation as within the power of the Commissioner to invoke and enforce. Appellees have also raised some jurisdictional issues which our disposition of the case makes unnecessary to consider.
We find that the construction placed on the regulation by the litigants is inconsistent with the plain language of the regulation. Having reached this conclusion we are, as hereinafter explained, forced to the conclusion that this appeal presents no justiciable controversy to this court.

APPELLANTS' COMPLAINTS
Appellants structure two hypothetical fact situations to illustrate the alleged flaws in the regulation. One involves a vehicle worth $500 before incurring covered damage. The damage will cost $800 to repair. Appellants interpret the regulation to require them to reimburse the insured $800. We cannot agree with this interpretation. Under option "c" of the regulation, the insurance company may replace the car. It may well be that the most convenient way for the insurer to replace the $500 car is to pay the insured $500 in satisfaction of the claim. Alternatively, the insurance company under option "a" may pay for the loss in money "based on an appraisal of the damage sustained by the insured's vehicle." If a $500 vehicle were damaged beyond repair, the measure of damages under Wyoming law would be no more than $500. Wilcox v. Herbst, 75 Wyo. 289, 295 P.2d 755, 760 (1956), citing 6 Blashfield, Cyclopedia of Automobile Law and Practice § 3411 (1945). In view of this, it would appear strange indeed if the owner of a $500 vehicle which was damaged but not totally destroyed should receive greater compensation than the owner of a $500 vehicle which was totally destroyed.
The other hypothetical fact situation structured by the appellants to illustrate their objection to the contested regulation appears to be more closely akin to the controversy which has spawned this litigation. Appellants hypothesize the situation in which the cost of repairs is less than the value of the car but is more than the decrease in value of the car caused by the covered damage. To take the appellants' example, a car is worth $3,000 before the damaging accident. After the accident, the vehicle would cost $400 to repair, but the car is assumed to be operable without repairs, and, in its damaged condition, is worth $2,750.
In this situation, two methods could be used to calculate the insurance company's liability. One method consists of calculating the cost of repairs so that the insurance *242 company would be liable for $400 under "b" of the regulation. The other method consists of subtracting the after-damage market value of the vehicle from the before-damage market value as encompassed by "a" of the regulation. Using this latter method, the insurance company would be liable for $250.
The insurance companies do not argue that they always need only pay $250, given the facts contained in the above hypothetical. Instead, it is their position that they will use the cost-of-repair method if repairs are actually undertaken but may use the decrease in market value if the vehicle is not repaired.[1] It is apparent that both sides in this litigation regard the commissioner's regulation as outlawing this last-mentioned practice, but we do not so construe the regulation.
Under option "a" of the contested regulation, it is clear that the insurer may pay for the loss in money "based on an appraisal of the damage sustained by the insured's vehicle." This plain language does not say that the damage appraisal must be calculated on the cost of repairs rather than on the decrease in market value. Furthermore, resort to our case law does not support the conclusion that option "a" necessarily dictates an appraisal based on the cost of repairs.
In Meredith GMC, Inc. v. Garner, 78 Wyo. 396, 328 P.2d 371, 373-374 (1958), we discussed the issue of how damages to a motor vehicle which is not totally destroyed are to be calculated. Surveying Wyoming precedent and various scholarly works, we concluded that damages could be calculated by using either the cost-of-repairs method or the decrease-in-market-value method. We indicated that the choice between these two methods should be determined "as the occasion may require." Id., 328 P.2d at 374.
Despite the contentions of the appellants-insurance companies, we do not read the contested regulation as flatly prohibiting a cash-settlement offer based on the decrease in market value of the damaged vehicle.
Assuming the above, this brings us to the central issue of whether or not this appeal presents a justiciable controversy.

JUSTICIABLE CONTROVERSY
The litigants' erroneous agreement concerning the interpretation of the regulation does not bind us to adopt an interpretation of the regulation which we find unsupported by its plain language or the law. We would be giving an advisory opinion if we evaluated a regulation based upon a stipulation which we interpret to reach an erroneous conclusion. This court does not render advisory opinions. E.g., Police Protective Association of Casper v. City of Casper, Wyo., 575 P.2d 1146, 1148 (1978); State v. Rosachi, Wyo., 549 P.2d 318, 322 (1976); Knudson v. Hilzer, Wyo., 551 P.2d 680, 686-687 (1976); and Kwallek v. State, Wyo., 596 P.2d 1372, 1379 (1979).
We would also be giving an advisory opinion if we attempted to delineate when the cost-of-repairs approach as opposed to the decrease-in-market-value approach is necessary in calculating an insurer's liability. It is not for this court to undertake to explore all possible situations under a rule. Kwallek, supra. The development of such case law must await the litigation of actual controversies. If regulations or laws are to be passed on the subject, they are not for us to promulgate.
The fact that this case involves declaratory judgment[2] does not circumvent *243 the proscription against advisory opinions or the requirement of a justiciable controversy. Police Protective Association, supra.
For lack of a justiciable controversy, this appeal is dismissed.
NOTES
[*] Chief Justice since January 5, 1981.
[**] Chief Justice at time of oral argument.
[1] The insurance companies state that in most instances the cost of repairs will be equal to the decrease in market value. Thus, they view their dispute with the Insurance Commissioner as involving only a small percentage of cases.
[2] Appellants sought to challenge the Commissioner's regulation by both appealing the regulation to the district court and filing a complaint for declaratory judgment in the district court. The district court concluded that the declaratory-judgment action was superfluous since he concluded that the appellants' appeal to his court would provide all relief the appellants were entitled to. Appellees have raised procedural challenges to both of these attempts by the appellants to get into district court. However, as stated above, we find it unnecessary to address these procedural issues in light of our conclusion that the appeal suffers the fatal jurisdictional defect of lacking a justiciable controversy.